UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
REGGIE WILLIAMS,                                    **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**17 cv 4391  (ER)**

              Plaintiff,
  vs.

The CITY OF NEW YORK,
NEW YORK CITY POLICE OFFICERS
LAURA CLAVIJO,
and JOHN DOES 1 and 2,
in their individual and official capacities,

              Defendants.
-------------------------------------------------------------x

      Plaintiff Reggie Williams, by his attorney, Cyrus Joubin, respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

As Plaintiff made clear in his Pre-conference Letter (ECF No. 12), Defendants' Motion to Dismiss is, in part, unopposed. This Memorandum of Law addresses only the portions of Defendants' Motion that Plaintiff opposes. Specifically, Plaintiff maintains that his Complaint alleges viable claims for false arrest, malicious prosecution, illegal search, unlawful seizure, and failure to intervene under 42 U.S.C. § 1983 ("Section 1983"), as well as state law claims of malicious prosecution and *respondeat superior*.

This lawsuit concerns Plaintiff's arrest and prosecution on June 1, 2016 for selling stand-up comedy tickets in Times Square without a vendor license. On the date of Plaintiff's arrest, comedy ticket sellers did not need any license. On August 1, 2016, a new law in New York City – "Local Law to License Ticket Sellers" – went into effect requiring comedy ticket sellers to have a license.[1] Defendants argue that even before that law was enacted, a vendor license was necessary for comedy ticket sellers under New York City Administrative Code § 20-453 ("AC 20-453").

The key legal issue underlying Defendant's Motion to Dismiss is one of basic statutory interpretation: Does the word "service" in AC 20-453 encompass stand-up comedy? If so, that statute required Plaintiff to have a general vendor license on the date of his arrest. If not, Plaintiff did not need a license. The clear answer to that statutory interpretation question is found in *New York Skyline, Inc. v. City of New York*, 94 A.D.3d

---

[1] This is Law number 2016/080, signed into law by Mayor Bill de Blasio on June 28, 2016. *See* http://www1.nyc.gov/site/dca/about/new-laws-rules.page ("Local Law to License Ticket Sellers" – "Local Law Effective Date:  August 1, 2016" – "The bill would require that anyone selling tickets for any place of entertainment, mode of transportation, or sight-seeing tour in a public space have a ticket seller license issued by the Department of Consumer Affairs.") (including a link to the Rule with legislation text, details, and timeline).

2

23 (1ˢᵗ Dept. 2012), in which the First Department held that entertainment (such as theater, concerts, and sporting events) is not a "service" under AC 20-453.

Stand-up comedy is obviously a form of entertainment. Because of that, Defendants try to twist and distort the holding of *Skyline* in order to distract this Court from its obvious meaning. A straightforward reading of *Skyline* – which explicitly distinguishes between "service" and "entertainment" – exposes the baselessness of Defendants' arguments in their Motion to Dismiss. The significance of *Skyline*, to be clear, is that in light of well-established law by the First Department, the defendant officers had no probable cause to arrest Plaintiff for violating AC 20-453. The defendants were not reasonable in interpreting AC 20-453 in the opposite manner than the First Department. Accordingly, the defense of qualified immunity does not apply to the false arrest, unlawful search and seizure, and malicious prosecution of Plaintiff.

## ARGUMENT

### i.   The issue:  Is stand-up comedy a "service" under AC 20-453?

Defendants argue that Plaintiff's Section 1983 claims of False Arrest, Malicious Prosecution, and Failure to Intervene – along with his state law claims of malicious prosecution and *respondeat superior* – should be dismissed because probable cause existed for his arrest and prosecution on June 1, 2016. The reason probable cause existed, Defendants contend, is because AC 20-453 requires general vendors who sell "goods or services" to have a license, Plaintiff was selling stand-up comedy tickets, and stand-up comedy is a "service." Even if this is incorrect, Defendants argue, they are entitled to qualified immunity. They offer various explanations for qualified immunity, ranging from the trivial (e.g. "AC 20-453 did not explicitly exclude comedy show ticket

3

vendors") to the untrue (e.g. "no binding precedent interprets AC 20-453 as being inapplicable to comedy show ticket vendors"). *See* Defendants' Memorandum of Law, October 13, 2017, at 15 ("Defs.' Memo").

The central issue in Defendants' motion to dismiss is whether stand-up comedy is a "service" under AC 20-453. Defendants have correctly identified the crucial First Department *Skyline* case that addresses this issue. But Defendants misread *Skyline* and ignore its clear conclusion: entertainment is not a "service" – therefore, AC 20-453 does not apply to people who sell tickets to entertainment events. *See also People v. Rondon*, 2016 N.Y. Misc. LEXIS 1855, at *3 (Crim. Ct. NY County 2016) ("[I]t is clear that an entertainment experience is not a 'service'") (decided on May 23, 2016).

### ii. *Skyline* clearly holds that entertainment is not a "service."

The First Department's *Skyline* decision is lucid, well-reasoned, and directly on point. Addressing the very statute that is at issue in this case – AC 20-453 – the First Department "conclude[d] that the sale of admission tickets to Skyride [a simulated helicopter experience] on a public sidewalk does not require a general vendor license under the Administrative Code." *Skyline*, 94 A.D.3d at 26. The First Department engages in sound statutory interpretation, examining the "plain meaning" of AC 20-453:

> "As a matter of common parlance, one would not say that the Skyride experience is a 'service.' For instance, a sports fan does not refer to a ball game as being a 'service.' Similarly music lovers do not talk about the 'service' they received when listening to a concert. Nor do theatregoers refer to getting a 'service' when they attend a play or musical."

*Id.* at 27 (internal citations omitted). The First Department then distinguishes between "entertainment" and "service," and characterizes the claim that Skyride is a "service" as "a strained and unnatural construction of that term." *Id.* "Had the City Council intended

4

to include 'entertainment' within the reach of the general vending laws, it would have explicitly included that term in the statute." *Id.*

*Skyline* adopts the definition of "entertainment" provided by Webster's Dictionary: "a public performance designed to divert or amuse." *Id*. A comedian is "a comical individual; specifically: a professional entertainer who uses any of various physical or verbal means to be amusing."[2] Wikipedia defines stand-up comedy as: "a comic style in which a comedian performs in front of a live audience, usually speaking directly to them."[3] In other words, stand-up comedy is, by definition, entertainment.

In arguing that "comedians, as entertainers, provide a service to others, such as to make the audience laugh" (Defs.' Memo at 18), Defendants engage in semiotic jiu-jitsu to obfuscate *Skyline*'s clear distinction between entertainment and service. According to Defendants' logic, all entertainers provide a service, therefore entertainment *is* service. Defendants' arguments are nothing more than a rebuttal of *Skyline*. They invoke the defense of qualified immunity by arguing that there are reasons to arrive at a different conclusion than the First Department's conclusion in *Skyline*.

But the doctrine of qualified immunity does not work that way. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal citations omitted). There is no doubt that Plaintiff had a clearly established right not to be falsely arrested, unlawfully searched and detained, and maliciously prosecuted, and *Skyline* clearly established his right to sell

---

[2] www.merriam-webster.com/dictionary/comedian
[3] www.en.m.wikipedia.org/wiki/Stand-up_comedy

comedy tickets on June 1, 2016 without a license.  Put differently, in light of clear case law, it was not objectively reasonable for an officer to believe that probable cause existed to detain, arrest, and prosecute Plaintiff's for selling comedy tickets, and officers of reasonable competence would all agree that probable cause did *not* exist to arrest Plaintiff.  *See Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015).

### iii. Defendants' other arguments are unavailing.

Defendants make a series of other unpersuasive arguments.  Defendants argue, for instance, that the *Skyline* holding is "narrowly held" and "limited" to the facts of that case.  Defs.' Memo at 17.  That argument borders on the incomprehensible.  Every case involves a unique set of facts; to argue that an appellate decision does not apply to another set of facts is inimical to the very idea of judicial precedent.  As for Defendants' spurious claim that the First Department itself "limited" its *Skyline* decision to Skyride ticket agents – their Memorandum of Law failed to accurately quote that decision.[4]

Defendants also argue that some courts have held that "entertainers provide services" (Defs.' Memo at 18), citing various cases about exotic dancers and a New York Court of Appeals case from 1934.  While good stand-up comedians bear their souls, it is a bit of a stretch to equate them to strippers.  Moreover, none of the "entertainers provide services" cases cited by Defendants deal with AC 20-453.  Consequently, none of these cases diminish the significance of *Skyline*.

Defendants also cite Exhibit E, a purported website for the LOL Comedy Club for which Defendants provide no foundation.  Even assuming *arguendo* that the Court can

---

[4] Defendants take a phrase in the middle of a sentence ("our holding is limited to the issue of whether Skyline ticket agents are general vendors") and quote it as if the original sentence ended that way, creating a false meaning.  The First Department's actual sentence makes a completely different point.  *See Skyline*, 94 A.D.3d at 28.

take judicial notice of Exhibit E, the words "excellent service" do not change the nature of a comedy club.  Any theater, musical, or sporting event might have ushers who escort viewers to their seats, people who sell beverages, and other forms of hospitality that may be boasted as "excellent service."  If those features converted entertainment into service, the *Skyline* distinction between service and entertainment would be eliminated.

Defendants also argue that the "reasonableness of PO Clavijo's belief in the lawfulness of her actions" is demonstrated because players in the criminal justice system failed to notice that AC 20-453 did not apply to the sale of comedy tickets.  Defs. Memo at 11.  There is no merit for the proposition that an officer's mistake is reasonable if other people make the same mistake; an officer's incompetence is not excused by the incompetence or oversight of lawyers.  With respect to the criminal court judges, it simply not their role to *sua sponte* screen and dismiss meritless prosecutions.

### iv.  Remaining issues

#### a.  Unlawful Search

Defendants do not specifically address Plaintiff's unlawful search claim. For the reasons stated above, Plaintiff's arrest for selling comedy tickets was not supported by probable cause, and it follows that the warrantless search of his person – to which he did not consent – was unlawful as well.  *See Riley v. California*, 134 S. Ct. 2473, 2482 (2014) .

#### b.  Failure to Intervene

According to Plaintiff's Failure to Intervene claim, the two unidentified officers – John Does 1 and 2 – failed to stop defendant Officer Clavijo's unconstitutional actions. Plaintiff's Complaint clearly alleges that the two unnamed officers initiated contact with

the Plaintiff, seized him, and were present when Officer Clavijo falsely arrested him on the sidewalk.  Pl.'s Compl. at 5.  Accordingly, the two John Doe defendants knew of Plaintiff's unconstitutional arrest and, despite their having an opportunity to prevent it, failed to do so.  *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

### c. Malicious Prosecution under Section 1983

Plaintiff's admitted possession of marijuana – which was discovered at a later time and separate location (in the police van) than his arrest for selling comedy tickets (on the sidewalk) – does not eliminate his malicious prosecution claim.  *See Allen v. City of New York*, 480 F. Supp. 2d 689, 715 (S.D.N.Y September 29, 2006).  Possession of marijuana is a violation, not a crime, whereas acting as an unlicensed general vendor under AC 20-453 is a misdemeanor.  A conviction for AC 20-453 gives a defendant a criminal record in New York State and exposes that person to a three-month jail sentence.  *See* Administrative Code 20-472 (Penalties).  Because he was charged with a misdemeanor, Plaintiff, who has no criminal record, faced a criminal prosecution that lasted over nine months.  A mere marijuana possession charge has a shorter speedy trial time limit (30 days pursuant to NY Criminal Procedure Law Section 30.30) than the misdemeanor Plaintiff was charged with (60 days), affecting the length of prosecution.

### d. False Arrest under Section 1983

Plaintiff's false arrest claim is limited to damages from the time he was handcuffed on the street to the time marijuana was found in his pocket in the police van.  *See Faraone v. City of New York*, 13 cv 9074 (DLC), 2016 U.S. Dist. LEXIS 36316, at *6 (S.D.N.Y. March 21, 2016).  While Plaintiff's false arrest claim is limited in its scope of damages due to the discovery of marijuana, it is not eliminated in its entirety.

### e. State law malicious prosecution and *respondeat superior*

Defendants concede that Plaintiff's Notice of Claim was timely filed with respect to his state law claims of malicious prosecution and *respondeat superior* (as it relates to malicious prosecution) because Plaintiff filed a Notice of Claim within 90 days of the dismissal of his prosecution.  *See* Defs.' Memo at 26.  Defendants argue that if the Court dismisses Plaintiff's Section 1983 malicious prosecution claim, then it must also dismiss his state law malicious prosecution claim.  For the reasons stated above, there was no probable cause to believe Plaintiff violated AC 20-453.  Accordingly, both his state and federal malicious prosecution claims must survive Defendants' motion to dismiss.

### f. Unlawful Seizure

Defendants' Memorandum of Law mentions Plaintiff's unlawful Seizure claim but does not attempt to articulate why the defendant officers had reasonable suspicion to approach and detain Plaintiff.  Defendants have thus waived any argument on Plaintiff's clearly labeled Fifth Cause of Action of Unlawful Seizure Under Section 1983.

### **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully submits that the Defendants' Motion to Dismiss should be denied.  Plaintiff concedes that only his *Monell* claim and state law claims of false arrest and unreasonable search and seizure should be dismissed.

DATED:   October 19, 2017                                  _____/s/_____
         New York, New York                                CYRUS JOUBIN, ESQ.
                                                           43 West 43rd Street, Suite 119
                                                           New York, NY 10036
                                                           (703) 851-2467
                                                           joubinlaw@gmail.com
                                                           Attorney for Reggie Williams

TO:  VIA ECF
     W. KeAupuni Akina (counsel for Defendants)