UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REGGIE WILLIAMS,

                Plaintiff,

- against -

CITY OF NEW YORK, LAURA CLAVIJO, *individually and in her representative capacity*, and JOHN DOES 1–2, *individually and in their representative capacities*,

                Defendants.

**OPINION AND ORDER**

17 Civ. 4391 (ER)

Ramos, D.J.:

On June 10, 2017, Reggie Williams ("Williams" or "Plaintiff") brought this Complaint against Defendants Laura Clavijo ("Clavijo"), John Does 1–2, and the City of New York (the "City") (collectively, "Defendants"). *See* Compl. (Doc. 1). Williams raised seven claims arising under 42 U.S.C. § 1983 ("Section 1983") and five claims arising under New York state law. *Id.* Defendants have moved to dismiss the Complaint. *See* Doc. 15. For the following reasons, Defendants' motion is DENIED in part and GRANTED in part.

**I.    BACKGROUND**

On June 1, 2016, Williams was selling comedy show tickets for Comic Strip Live in front of a Forever 21 store in Times Square. *See* Compl. ¶¶ 17, 25. Williams has sold comedy club tickets for the LOL Comedy Club and Comic Strip Live since 2014. *Id.* ¶ 20.

At approximately 3:45 p.m., the John Doe officers approached Williams and asked for his license. *Id.* ¶¶ 22–23. Williams handed the officers his driver's license. *Id.* ¶ 24. The officers then told Williams that he was not supposed to sell comedy tickets without a vendor's license, which Williams concededly did not have. *Id.* ¶ 28.

After a brief conversation, Police Officer Clavijo joined the John Doe officers. *Id.* ¶ 29. She then handcuffed Williams and transported him to a nearby police precinct. *Id.* ¶¶ 29–31. On the way, she conducted a search of Williams and found a small amount of marijuana in his pocket. *Id.* ¶ 33. Williams was detained at the precinct and then received a desk appearance ticket for Midtown Community Court. *Id.* ¶¶ 34–35.

When Williams appeared at Midtown Community Court, he was charged with possession of marijuana and unlicensed vending. *Id.* ¶ 36. Williams was ordered to make three court appearances in criminal court before his case was dismissed on March 8, 2017 under New York speedy trial provisions. *Id.* ¶ 40.

Williams filed the instant complaint on June 10, 2017, raising twelve claims: (1) deprivation of federal civil rights under Section 1983; (2) illegal search under Section 1983; (3) false arrest under Section 1983; (4) malicious prosecution under Section 1983; (5) unlawful seizure under Section 1983; (6) failure to intervene under Section 1983; (7) municipal liability under Section 1983; (8) false imprisonment under state law; (9) malicious prosecution under state law; (10) unreasonable search and seizure under the New York State Constitution; (11) negligent hiring, training, or retention under state law; and (12) respondeat superior under state law. *Id.* ¶¶ 45–94.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory

statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

The Court begins where the parties agree: Williams concedes that his § 1983 claims for deprivation of federal civil rights and *Monell* liability, and his state law claims for false imprisonment, unreasonable search and seizure, and negligent hiring, training or retention, must be dismissed. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Mem.") (Doc. 18), at 2, 9. The Court therefore GRANTS Defendants' motion to dismiss with respect to those claims (Claims 1, 7, 8, 10, and 11). Both parties also agree that Williams' claim for respondeat superior liability should be limited to vicarious liability on Williams' malicious prosecution claim only. *See* Pl.'s Mem. at 9.

### A. Qualified Immunity

Defendants argue that Officer Clavijo is entitled to qualified immunity because her decision to arrest Williams based on his inability to produce a general vendor's license was at

least arguably reasonable. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Mem.") (Doc. 16), at 6–12.

"[A]n arresting officer is entitled to qualified immunity on a claim of false arrest if either: (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 203 (E.D.N.Y. 2010) (citing *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007)); *see also Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999). The Second Circuit has defined the latter standard, commonly referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (quotation marks and internal citations omitted) (emphasis in original). Only where an officer's "judgment was so flawed that no reasonable officer would have made a similar choice," is the denial of qualified immunity appropriate. *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (citing *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995)).

The center of the parties' dispute is whether New York City law in June 2016 prohibited the unlicensed sale of comedy tickets and whether it was reasonable for Officer Clavijo to believe that it did. Specifically, New York City Administrative Code Section 20-453 provided that: "It shall be unlawful for any individual to act as a general vendor without having first

4

obtained a license in accordance with the provisions of this subchapter . . . ." N.Y. Admin. Code § 20-453.[1]

Defendants argue that as of June 1, 2016, "there was no clear appellate case law . . . defining whether § 20-453 applied to ticket vendors." Defs.' Mem. at 7. Williams disagrees, and points to *New York Skyline, Inc. v. City of New York*, 94 A.D.3d 23 (1st Dep't 2012). *See* Pl.'s Mem. at 4. In *New York Skyline*, a case that also involved the sidewalk sale of tickets, the First Department analyzed the definition of a "general vendor" under § 20-453. Noting that the New York City Code defined "general vendor" as "[a] person who hawks, peddles, sells, leases or offers to sell or lease, at retail, goods or services . . . in a public space," the court addressed whether the sale of tickets to a simulated helicopter experience constituted the sale of "goods or services." *New York Skyline*, 94 A.D.3d at 25–26.[2] Constructing the word service "with its common, everyday meaning," the First Department determined that the sales were not for "services," noting that:

> As a matter of common parlance, one would not say that the Skyride experience is a "service." For instance, a sports fan does not refer to a ball game as being a "service." Similarly, music lovers do not talk about the "service" they received when listening to a concert. Nor do theater goers refer to getting a "service" when they attend a play or musical. . . .
>
> When one thinks of a "service," as that word is ordinarily used, things like haircuts, home repair, house cleaning and car washes come to mind. Skyride is more appropriately characterized as a form of entertainment. "Entertainment" is defined as, inter alia, "a public performance designed to divert or amuse." That is precisely what Skyline is . . . .

---

[1] Shortly thereafter, on June 28, 2016, a new law was signed requiring comedy ticket sellers to apply for and display a license while working. *See* Compl. ¶ 16.

[2] The "Skyline experience" took place on the second floor of the Empire State Building and included a brief lecture about the building followed by a fifteen minute film that "[took] visitors on a virtual helicopter ride over New York City and its landmarks" and was narrated by the actor Kevin Bacon. *Id.* at 24.

*Id.* at 27 (internal citations and quotations omitted). Williams argues that after *New York Skyline*, § 20-453 could not reasonably be understood to require a license for the sale of tickets to a comedy show, a form of entertainment. Pl.'s Mem. at 5.

Although Defendants attempt to distinguish *New York Skyline*, the Court finds their arguments unconvincing.³ Instead, the question is whether a state appellate court decision establishes New York law such that it would be unreasonable for a police officer to believe that a comedy show ticket seller was a "general vendor" for whom the licensing provisions of § 20-453 applied.⁴ The Court finds that it does.

---

³ First, Defendants argue that "reasonable minds can disagree" about whether a comedy show is a "service," noting that several cases in New York refer to entertainment as a "service" and that the website for the LOL Comedy Club states on its website that it provides "excellent service." Defs.' Mem. at 10–11. But the question is not whether a police officer would consider a comedy show a "service," the question is whether a police officer, acting reasonably, would believe probable cause existed to seize and arrest a comedy show ticket seller given First Department precedent that "the sale of tickets to an entertainment event [is not] within the ambit of" § 20-453. *New York Skyline*, 94 A.D.3d at 28.

Next, Defendants argue that *New York Skyline* is expressly limited to the facts of that case and that case alone, pointing to language in which the court said that "our holding is limited to the issue of whether Skyline ticket agents are vendors." Defs.' Mem. at 9. But the First Department's statement was made to limit the applicability of its holding on other statutes aimed at reducing sidewalk congestion, not to limit the applicability of its holding to other purveyors of entertainment. *See New York Skyline*, 94 A.D.3d at 28. Since 2012, other courts, operating in different contexts, have also recognized the clear holding of *New York Skyline* that § 20-453 does not apply to sellers of entertainment tickets. *See Lederman v. New York City Dep't of Parks & Recreation*, 901 F. Supp. 2d 464, 471 (S.D.N.Y. 2012) *aff'd* 731 F.3d 199 (2d Cir. 2013) ("In *Skyline*, the New York State Supreme Court, Appellate Division, First Department read the definition of "vendor" in the City's Administrative Code . . . to exclude entertainers."); *People v. Griffith*, 71 N.Y.S. 3d 815 (N.Y. Crim. Ct. 2018) ("*Skyline*'s holding [was] that the general vendor statutes do not cover ticket selling for forms of entertainment . . . .").

More generally, the opinion in *New York Skyline* expressly addresses other types of "entertainment"—ball games and music performances—and provides a broad definition of entertainment that clearly would include comedy performances.

⁴ Defendants argue that to show that qualified immunity is not warranted, Williams must show that the "right to sell comedy show tickets without the requirement of a general vending license" was clearly established in 2015. Defendants are conflating the qualified immunity inquiry with the probable cause inquiry. Under a qualified immunity analysis, "a court must first decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and then whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Lindsey v. Butler*, No. 11 Civ. 9102 (ER), 2014 WL 5757448, at *2 (S.D.N.Y. Nov. 5, 2014). Williams has no constitutional right to sell comedy show tickets without a license, but he does have a constitutional right not to be arrested without probable cause that he was committing a crime. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1999) ("A § 1983 claim for false arrest rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . ."). The issue for this Court, then, is not whether the ability of a ticket vendor in New York to sell comedy tickets without a license was clearly

6

Courts regularly look to state statutes—and state decisional law further interpreting those statutes—to determine what constitutes an "offense" under state law for the purposes of arguable probable cause analysis. *See United States v. Nelson*, 500 F. App'x 90, 92 (2d Cir. 2012) (relying on Court of Appeals decisions interpreting New York's disorderly conduct statute); *see also Decker v. Campus*, 981 F. Supp. 851, 857–58 (S.D.N.Y. 1997) (relying on several Appellate Division cases to understand the bounds of obstruction of governmental administration under New York law). In their reply, Defendants appear to argue that the First Department's opinion cannot determine the bounds of §20-453 because "the remaining three appellate courts and the New York State Court of Appeals all appear to be silent on this issue." Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Reply Mem.") (Doc. 19), at 6. But general principles of *stare decisis* and the *Erie* doctrine belie this point. Where the Court of Appeals is silent on a point of New York law, federal courts must "apply the law as interpreted by New York's intermediate appellate courts" unless there is "persuasive evidence that the New York Court of Appeals, which has not ruled on th[e] issue, would reach a different conclusion." *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999); *see also West v. AT&T Co.*, 311 U.S. 223, 237 (1940). Further, because the Appellate Division "is a single statewide court divided into departments for administrative convenience," "the doctrine of *stare decisis* requires trial courts in [a] department to follow precedents set by the Appellate Division of another department until the Court of Appeals or [its appellate department] pronounces a contrary rule." *Mountain View Coach Lines, Inc. v. Storms*, 102 A.D.2d 663, 665 (2d Dep't 1984). In other

---

established by Supreme Court or Second Circuit law in 2016; it is whether there was arguable probable cause to arrest Williams for committing a crime.

That being said, for all the reasons stated above, the First Department's opinion in *New York Skyline* did establish the "right to sell comedy show tickets without the requirement of a general vending license."

7

words, where an appellate department has spoken without contradiction by other departments or the Court of Appeals, lower state courts and federal courts must listen. The First Department's decision in *New York Skyline*, then, was a statement of New York law that police officers were no more entitled to ignore than the decisional law of the Court of Appeals or the Second Circuit.

Probable cause only exists where there are facts and circumstances sufficient "to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing *a crime.*" *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (emphasis added). In other words, there is not probable cause or arguable probable cause if the conduct "a person of reasonable caution" believes is occurring is not a crime. This is not a case, for example, where Williams was required to have a license and Officer Clavijo reasonably but incorrectly believed he did not have one. Instead, taking Williams' allegations as true, Officer Clavijo correctly assessed the situation—Williams did not possess a license to sell comedy tickets—but believed that such activity was criminal when it was not. Because New York law at the time of Williams' arrest was that sales of tickets to entertainment events were not sales of "goods" or "services" as required by § 20-453, Defendants' argument that Officer Clavijo had arguable probable cause to arrest him for failing to produce a license is unavailing. The Court therefore finds that Defendants have not shown that Officer Clavijo is entitled to qualified immunity at this stage.

Defendants do not put forward other arguments in support of their motion to dismiss Williams' false arrest, unlawful search, and unlawful seizure claims. *See* Reply Mem. at 1 (discussing false arrest), 6 (discussing unlawful search), 9–10 (discussing unlawful seizure). Because Officer Clavijo is not entitled to qualified immunity, the Court denies Defendants' motion with respect to those claims (Claims 2, 3, and 5).

### B. Presence of Marijuana

Defendants point out that even if there was not arguable probable cause to arrest Williams for a violation of § 20-453, there was probable cause to arrest him once the search revealed that he possessed marijuana. Defs.' Mem. at 13. Williams concedes that his claim for damages is limited to the period between "the time he was handcuffed on the street to the time marijuana was found in his pocket in the police van." Pl.'s Mem. at 8. Both parties are correct that the existence of marijuana vitiates any claim for false arrest after the discovery of the drug. *See Gannon v. City of New York*, 917 F. Supp. 2d 241, 243–44 (S.D.N.Y. 2013). Although Williams' ultimate recovery, if any, will be limited, that does not affect this Court's decision on a motion to dismiss.

### C. Malicious Prosecution

Defendants also argue that even if Officer Clavijo is not entitled to qualified immunity, Williams' claim for malicious prosecution should be dismissed because Williams has not alleged that there was a post-arraignment deprivation of liberty. Defs.' Mem. at 14, Reply Mem. at 8–9.

Because a § 1983 claim for malicious prosecution is rooted in the Fourth Amendment right to be free of unreasonable seizure, a plaintiff asserting the claim must "show some deprivation of liberty consistent with the concept of seizure." *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010) (internal quotation marks and citations omitted). Therefore, he must assert "a sufficient post-arraignment liberty restraint to implicate [his] Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). Although the issue is hardly settled conclusively in the Second Circuit, most courts follow the guidance of *Swartz v. Insogna* that "a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment

9

deprivation of liberty." *Swartz*, 704 F.3d 105, 112 (2d Cir. 2013) (internal quotations marks and citations omitted); *see also Price v. City of New York*, No. 15 Civ. 5871 (KPF), 2018 WL 3117507, at *7–8 (S.D.N.Y. June 25, 2018); *Norton v. Town of Islip*, No. 12 Civ. 4463 (PKC), 2016 WL 264930, at *3–4 (E.D.N.Y. Jan. 21, 2016) *aff'd* 678 F. App'x 17 (2d Cir. 2017). Here, Williams has alleged that he was arrested, arraigned, pled not guilty, and "was ordered to make approximately three court appearances." *See* Compl. ¶¶ 29, 35–40. Because Williams has sufficiently alleged a deprivation of liberty post-arraignment, Defendants' motion to dismiss is DENIED.

With respect to the state law malicious prosecution claim, a post-arraignment deprivation of liberty is not required. "To establish a claim for malicious prosecution under New York law, the plaintiff must show (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Posr*, 180 F.3d at 417. Defendants argue that the discovery of marijuana in Williams' pocket merits dismissal of Williams' malicious prosecution claim because after the discovery of the marijuana, there was probable cause to prosecute Williams. Defs.' Mem. at 14. Probable cause is a complete defense to a malicious prosecution claim. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). However, "where a defendant is arrested and prosecuted for multiple crimes, the fact that the arrest might have been lawful because the police had probable cause to believe the defendant had committed at least *one* of those crimes is not, in itself, sufficient to demonstrate a basis for his prosecution for *all* of the crimes." *Allen v. City of New York*, 480 F. Supp. 2d 689, 715 (S.D.N.Y. 2007). Williams' claim for malicious prosecution with respect to the § 20-453 violation is unrelated to the merit (or lack thereof) of a claim for malicious

prosecution with respect to his possession of marijuana. Because Defendants have raised no other objection to Williams' malicious prosecution claim under state law, the motion to dismiss is DENIED.[5]

### D. Failure to Intervene

Williams' claim for failure to intervene is brought against all three officer defendants. *See* Compl. ¶¶ 69–70 ("Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers. The individual defendants failed to intervene on Plaintiff's behalf . . . ."). In opposing Defendants' motion to dismiss this claim, Williams explains that the claim is actually only being brought against John Does 1–2. Pl.'s Mem. at 7–8 ("Accordingly, the two John Doe defendants knew of Plaintiff's unconstitutional arrest and, despite their having an opportunity to prevent it, failed to do so."). Defendants state that they have not brought any motions, including this one, on behalf of the John Doe defendants and seek only two have the claim dismissed against Officer Clavijo. Reply Mem. at 7–8. Since it appears that there is no disagreement among the parties at this stage, the Court DISMISSES the sixth claim as against Officer Clavijo.

## IV. CONCLUSION

For the reasons set forth above, the Court grants part and denies in part Defendants' motion to dismiss with respect to all claims.

1. Defendants' motion to dismiss Claim 1 (deprivation of federal civil rights) is GRANTED;

2. Defendants' motion to dismiss Claim 2 (illegal search under § 1983) is DENIED;

3. Defendants' motion to dismiss Claim 3 (false arrest under § 1983) is DENIED;

---

[5] Because the Court denies Defendants' motion to dismiss the state law malicious prosecution claim, and Defendants make no independent arguments about the viability of Williams' vicarious liability claim against the City, the Court also denies Defendants' motion to dismiss the respondeat superior claim.

11

4. Defendants' motion to dismiss Claim 4 (malicious prosecution § 1983) is DENIED;

5. Defendants' motion to dismiss Claim 5 (unlawful seizure under § 1983) is DENIED;

6. Defendants' motion to dismiss Claim 6 (failure to intervene § 1983) against Officer Clavijo is GRANTED;

7. Defendants' motion to dismiss Claim 7 (municipal liability under § 1983) is GRANTED;

8. Defendants' motion to dismiss Claim 8 (false imprisonment under state law) is GRANTED;

9. Defendants' motion to dismiss Claim 9 (malicious prosecution under state law) is DENIED;

10. Defendants' motion to dismiss Claim 10 (unreasonable search and seizure under state law) is GRANTED;

11. Defendants' motion to dismiss Claim 11 (negligent hiring, training, or retention under state law) is GRANTED; and

12. Defendants' motion to dismiss Claim 12 (respondeat superior under state law) is DENIED.

The parties are directed to appear for a status conference on September 13, 2018 at 12:00 p.m. The Clerk of Court is respectfully directed to terminate the motion, Doc. 15. It is SO ORDERED.

Dated: August 31, 2018
New York, New York

Edgardo Ramos, U.S.D.J.